Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN ALBERTS,<br><br>Plaintiff,<br><br>vs.<br><br>COWEN INC., JEFFREY M. SOLOMON, BRETT BARTH, KATHERINE ELIZABETH DIETZE, GREGG A. GONSALVES, LORENCE KIM, STEVEN KOTLER, LAWRENCE LEIBOWITZ, MARGARET POSTER, and DOUGLAS A. REDIKER,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, John Alberts ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Cowen Inc. ("Cowen" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to The Toronto-Dominion Bank, through merger vehicle Crimson Holdings Acquisition Co. ("Merger Sub" and collectively with Parent, "TD") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an August 2, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Cowen's common stock will be converted into the right to receive $39.00 in cash, without interest. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

3. Thereafter, on September 27, 2022, Cowen filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on September 27, 2022 with the SEC in an effort to

Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Cowen, provided by Cowen management to the Board and the Board's financial advisor Ardea Partners LP ("Ardea") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Ardea, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of South Carolina and, at all times relevant hereto, has been a Cowen stockholder.

8. Defendant Cowen together with its subsidiaries, provides investment banking, research, sales and trading, prime brokerage, global clearing, securities financing, commission management, and investment management services in the United States and internationally. Cowen is incorporated in Delaware and has its principal place of business at 599 Lexington Avenue, New York, NY 10022. Shares of Cowen common stock are traded on the Nasdaq Stock Exchange under the symbol "COWN".

9. Defendant Jeffrey M. Solomon ("Solomon") has been a Director of the Company at all relevant times.

10. Defendant Carlton Barth ("Barth") has been a director of the Company at all relevant times.

11. Defendant Katherine Elizabeth Dietze ("Dietze") has been a director of the Company at all relevant times.

12. Defendant Gregg A. Gonsalves ("Gonsalves") has been a director of the Company at all relevant times.

13. Defendant Lorence Kim ("Johnson") has been a director of the Company at all relevant times.

14. Defendant Steven Kotler ("Kotler") has been a director of the Company at all relevant times.

15. Defendant Lawrence Leibowitz ("Leibowitz") has been a director of the Company at all relevant times.

16. Defendant Margaret Poster ("Poster") has been a director of the Company at all relevant times.

17. Defendant Douglas A. Rediker ("Rediker") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party The Toronto-Dominion Bank is an internationally operating financial institution. Shares of The Toronto-Dominion Bank common stock are traded on the Nasdaq Stock Exchange under the symbol "TD."

20. Non-Party Merger Sub is a wholly owned subsidiary of The Toronto-Dominion Bank created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its principal offices in the district and trades on the Nasdaq, which is headquartered in the district.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

24. Cowen Inc. together with its subsidiaries, provides investment banking, research, sales and trading, prime brokerage, global clearing, securities financing, commission management, and investment management services in the United States and internationally. It operates in two segments, Operating Company (Op Co) and Asset Company (Asset Co). The company offers public and private capital raising, and strategic advisory services for public and private companies. It also trades common stocks, listed options, equity-linked securities, and other financial

instruments on behalf of institutional investor clients. In addition, the company offers investment products and solutions in the liquidity spectrum to institutional and private clients, as well as provides investment research services. Further, it is involved in the private investment, private real estate investment, and other legacy investment activities. The company was founded in 1918 and is headquartered in New York, New York.

25. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the April 29, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted Operating Income of $42.8 million.

26. Speaking on the positive results, CEO Defendant Solomon said, "The breadth and strength of Cowen's business were on full display in the first quarter, as our team outperformed and delivered for clients despite challenging market conditions. We are confident that the strategic decisions and focused investments we have made over the last several years will enable us to continue generating consistent profitability throughout the economic cycle."

27. The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Cowen. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

28. Despite this upward trajectory, the Individual Defendants have caused Cowen to enter into the Proposed Transaction without providing requisite information to Cowen stockholders such as Plaintiff.

***The Flawed Sales Process***

29. As detailed in the Preliminary Proxy Statement, the process deployed by the

Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30. Notably, the Preliminary Proxy Statement fails to indicate whether a committee of independent and disinterested Board members was created to run the sales process, and if so, what powers the committee had in evaluating a potential transaction.

31. Moreover, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and TD, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33. On August 2, 2022, Cowen and TD issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **TORONTO and NEW YORK, August 2, 2022** – TD Bank Group ("TD") (TSX: TD) and (NYSE: TD) and Cowen Inc. ("Cowen") (NASDAQ: COWN) today announced a definitive agreement for TD to acquire Cowen in an all-cash transaction valued at US$1.3 billion, or US$39 for each share of Cowen common stock. Through this transaction, TD Securities will accelerate its long-term growth strategy in the United States by acquiring a high-quality and rapidly growing investment bank with outstanding talent and highly complementary products and services.
>
> "Cowen is a leading independent dealer with a premier U.S. equities business and a strong, diversified investment bank that, when combined with TD Securities, will allow us to accelerate our strategic U.S. growth plans," said Bharat Masrani, Group President and CEO, TD Bank Group. "Most importantly, the acquisition will

provide new capabilities and increased depth in key business lines to meet our clients' needs and will allow us to leverage our combined expertise, talent, and integrated offerings across a much larger client base."

With this acquisition, TD Securities will benefit from the addition of Cowen's 1,700 talented colleagues and its exceptional leadership team. Once the transaction closes, Jeffrey Solomon, Chair & CEO of Cowen, will join the senior leadership of TD Securities, reporting to Riaz Ahmed, President and CEO, TD Securities and Group Head, Wholesale Banking, TD Bank Group. To leverage the strength of Cowen's brand, post-closing, parts of the combined business will be known as TD Cowen, a division of TD Securities, and will be headed by Mr. Solomon.

"At Cowen our success comes from striving to outperform in all we do by exceeding expectations and providing innovative solutions to, and partnering with, our clients. Taking this step will make us even stronger and more effective in serving their growing needs," said Mr. Solomon. "The strategic decisions and focused investments that we have made over the last few years have positioned Cowen for this exciting next chapter of our growth. I look forward to having our exceptional talent and valued clients join the TD family. We plan to do great things together because we are aligned with our cultural values of vision, empathy, sustainability, and tenacious teamwork."

"Together, we will have more than 6,500 professionals in 40 cities across the globe, extending our reach into new industry coverage areas and building even deeper, long-term client relationships," added Mr. Ahmed. "I look forward to welcoming Jeff and his team to TD Securities and to the fantastic opportunities for growth we will create together."

**TD Securities and Cowen – A Leading Full-Service Investment Bank**

The combined firms' pro-forma global revenues will increase by more than a third to approximately C$6.8 billion1 with added advisory, capital markets, equity execution and industry-leading research capabilities and broadened expertise in key growth sectors. Following the closing of the transaction, TD Securities' existing depth and breadth in global market research capabilities will benefit from Cowen's complementary and highly diverse equity research franchise, which is positioned among the top 10 research platforms in the U.S. by both stocks under coverage and number of publishing analysts2 and includes considerable expertise in Environmental, Social and Governance research. Furthermore, TD Securities' balance sheet and capital markets expertise are expected to bring immediate benefits to Cowen's existing client base.

**Transaction Highlights**

The transaction is expected to be modestly accretive to TD's 2023E adjusted EPS on a fully-synergized basis3 and generate approximately 14% adjusted return on

> invested capital on a fully-synergized run rate basis.4 The purchase price represents a 1.7 times multiple of Cowen's tangible book value as of March 31, 2022 and a 8.1 times multiple of Cowen's 2023E earnings.5 TD expects to achieve US$300-350 million in revenue synergies by year three. TD expects to incur total pre-tax integration and retention costs of approximately US$450 million over three years.
>
> The transaction, which has been approved by the boards of directors of TD and Cowen, is expected to close in the first calendar quarter of 2023, and is subject to customary closing conditions, including approvals from Cowen's stockholders and certain U.S., Canadian, and foreign regulatory authorities, including the Office of the Superintendent of Financial Institutions (OSFI), the Financial Industry Regulatory Authority (FINRA), and under the Hart-Scott-Rodino (HSR) Act.

***Potential Conflicts of Interest***

34. The breakdown of the benefits of the deal indicate that Cowen insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Cowen.

35. Notably, Company insiders, currently own large, illiquid portions of Company stock which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. Significantly, while the Preliminary Proxy Statement provides the following it fails to provide an accounting of the cash consideration such amounts will be exchanged for:

| Name of Beneficial Owner | Number of Shares of Common Stock Beneficially Owned | Percent of Common Stock |
|---|---|---|
| **Holders of 5% or more of Common Stock:** | | |
| BlackRock, Inc. | 2,656,131 | 9.5% |
| The Vanguard Group, Inc. | 1,665,344 | 5.9% |
| Magnetar Capital, LLC | 1,626,807 | 5.8% |
| Azora Capital LP | 1,497,441 | 5.4% |
| **Directors and Executive Officers:** | | |

| | | |
|---|---|---|
| Brett H. Barth | 113,229 | * |
| Katherine E. Dietze | 85,459 | * |
| Gregg A. Gonsalves | 15,612 | * |
| Lorence Kim | 38,184 | * |
| Steven Kotler | 95,291 | * |
| Lawrence E. Leibowitz | 50,020 | * |
| Margaret L. Poster | 24,406 | * |
| Douglas A. Rediker | 72,280 | * |
| Jeffrey M. Solomon | 682,184 | 2.4% |
| John Holmes | 220,131 | * |
| Stephen A. Lasota | 257,055 | * |
| Owen S. Littman | 204,292 | * |
| l directors and executive officers as a group (12 persons, but not including any former executive officer) | 1,858,143 | 6.6% |

36. Additionally, Company insiders, currently own large amounts of Company, options, restricted stock units, and other Company equity awards which will vest and be exchanged for the merger consideration upon the consummation of the Proposed Transaction. The Preliminary Proxy Statement accounts for these awards as follows:

**Outstanding Compensation Awards ($)(In Thousands)**

| Name | Company RSUs | Company PSUs | Company DCAs | Total |
|---|---|---|---|---|
| *Executive Officers* | | | | |
| Jeffrey Solomon | 11,363 | 6,493 | 8,302 | 26,158 |
| John Holmes | 993 | 1,498 | 731 | 3,222 |
| Stephen Lasota | 893 | 1,416 | 664 | 2,973 |
| Owen Littman | 914 | 1,416 | 676 | 3,006 |

37. In addition, certain employment agreements with certain Cowen executives, entitle such executives to severance packages should their employment be terminated under certain

circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Potential Payments to Named Executive Officers ($)(In Thousands)**

| Name | Cash | Equity | Perquisites/ Benefits | Total |
|---|---|---|---|---|
| Jeffrey Solomon | 58,719 | 17,856 | 99 | 76,674 |
| John Holmes | 13,671 | 2,491 | 44 | 16,206 |
| Stephen Lasota | 12,104 | 2,309 | 46 | 14,459 |
| Owen Littman | 12,116 | 2,330 | 67 | 14,513 |

38. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Cowen, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

40. On September 27, 2022, the Cowen Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

41. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. Whether a committee of the Board that was composed solely of independent and disinterested directors was created to run the sales process;

    i. If such a committee was created then further information regarding the composition and powers of the committee;

    ii. If no such committee was created than adequate reasoning as to why no such committee was created;

b. Whether the confidentiality agreements entered into by the Company with TD differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including TD, would fall away; and

d. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Cowen's Financial Projections*

42. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Cowen provided by Cowen management to the Board and Ardea and relied upon by Ardea in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Ardea noted that it reviewed, "certain internal financial forecast scenarios for the Company."

44. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Cowen management provided to the Board and Ardea. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

45. With regard to the *Financial Forecasts* prepared by Cowen Management for the *Low Case*, *Base Case*, and *High Case*, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions used to calculate this metric, including specifically: pre-interest expense, post-tax economic operating income to Cowen, capital expenditures, acquisition & earnout payments, investments, after-tax proceeds from sales of investments, income from after-tax swap realization, after-tax stock-based compensation expense, and increases in net working capital;

b. Economic Operating Income, including all underlying necessary metrics, adjustments, and assumptions used to calculate this metric, including specifically: depreciation & amortization expense, management reclassifications which the Company believes provide additional insight on the performance of the Company's core businesses and divisions; the impact of consolidation for consolidated funds, certain other transaction-related adjustments and/or reorganization expenses, and certain costs associated with debt; and

c. Economic Operating Income per Share, including all underlying necessary metrics, adjustments, and assumptions used to calculate this metric, including specifically: economic operating income and weighted average diluted shares outstanding.

46. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47. The Preliminary Proxy also fails to disclose the underlying bases for adjustments upon which the alternative cases rely.

48. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Ardea's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Ardea*

50. In the Preliminary Proxy Statement, Ardea describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51. With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific inputs, metrics, and assumptions used to determine illustrative discount rates ranging from 10.5% to 11.5%;

b. The Company's weighted average cost of capital;

c. The specific illustrative terminal values for the Company as of December 31, 2026;

d. The specific inputs, metrics, and assumptions used to determine illustrative terminal multiples ranging from 4.0x to 6.0x;

e. The net debt of the Company as of March 31, 2022; and

f. The total number of shares of class A common stock outstanding on a fully diluted basis as of March 31, 2022.

52. With respect to the *Illustrative Present Value of Future Stock Price and Dividends Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine multiples ranging from 4.0x to 6.0x;

b. The specific inputs and assumptions used to determine a discount rate of 12.1%; and

c. The Company's cost of equity.

53. With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The date on which each transaction compared closed;

b. The specific inputs and assumptions used to determine a reference range of FY1 P/E multiples of 9.0x to 14.3x; and

c. The specific inputs and assumptions used to determine a reference range of P/BV multiples of 1.0x to 2.1x.

54. With respect to the *Historical Premia Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific transactions compared;

b. The value of each transaction compared;

c. The date on which each transaction compared closed; and

d. The specific inputs and assumptions used to determine a range of premia from 27.1% to 58.3%.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Cowen stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

64. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

65. Plaintiff repeats all previous allegations as if set forth in full herein.

66. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The

Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Cowen's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

69. The Individual Defendants acted as controlling persons of Cowen within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Cowen to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Cowen and all of its employees. As alleged above, Cowen is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 29, 2022

**BRODSKY & SMITH**

By: */s/ Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*